| Estado Libre Asociado de Puerto Rico<br>TRIBUNAL DE APELACIONES<br>PANEL II | | |
|---|---|---|
| FERNANDO GARCÍA MARQUEZ<br><br>Parte Recurrente<br><br>v.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACION (CENTRO DETENCIÓN BAYAMÓN 1072)<br><br>Parte Recurrida | TA2025RA00332 | *Revisión Administrativa* procedente del Departamento de Corrección y Rehabilitación<br><br>Caso Núm. CDB-384-25<br><br>Sobre: Regla 9 |

Panel integrado por su presidenta la Jueza Cintrón Cintrón, el Juez Rodríguez Flores y la Jueza Díaz Rivera.

Rodríguez Flores, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 19 de diciembre de 2025.

Comparece por derecho propio y de forma *pauperis*[1] el Sr. Fernando García Márquez (señor García Márquez o recurrente) mediante recurso suscrito el 8 de octubre de 2025, y recibido por la Secretaría de este Tribunal el 27 de octubre de 2025. Solicita que revisemos la *Resolución* emitida el 10 de septiembre de 2025, por la División de Remedios Administrativos del Departamento de Corrección y Rehabilitación. En su dictamen, el foro administrativo confirmó la desestimación de la solicitud de remedio administrativo del recurrente por falta de jurisdicción para atender el reclamo.

La parte recurrida, Departamento de Corrección y Rehabilitación (DCR), presentó su alegato en oposición por conducto de la Oficina del Procurador General.

---

[1] A pesar de que el recurrente no presentó ante nuestra consideración una solicitud para litigar como indigente, acogemos como tal la declaración de indigencia que este ofrece en su recurso y lo autorizamos a litigar en forma *pauperis.*

Con el beneficio de ambas comparecencias, damos por sometido el asunto y resolvemos.

**I.**

El 7 de julio de 2025, el señor García Márquez presentó ante la División de Remedios Administrativos (División de Remedios) del DCR la solicitud de remedio administrativo número CDB-384-25 al amparo del *Reglamento para Atender las Solicitudes de Remedios Administrativos Radicadas por los Miembros de la Población Correccional,* Reglamento Núm. 8583, de 4 de mayo de 2015. El recurrente solicitó que el Superintendente de la institución correccional en la que se encuentra confinado dejara sin efecto la Regla 9 del *Reglamento para Establecer el Procedimiento Disciplinario de la Población Correccional,* Reglamento Núm. 9221, de 8 de octubre de 2020, a tenor con la cual, como medida de seguridad, se les suspendieron ciertos privilegios a todos los confinados de su sección o módulo, por un término de diez (10) días calendarios. Adujo que el registro que dio paso a la Regla 9, durante el cual se ocupó material prohibido y/o ilegal, adolecía de irregularidades. Por ejemplo, mencionó que el documento entregado tras el registro no está firmado por un oficial que no es el Superintendente de la institución, que no se le notificó el informe de hallazgos posterior al registro y que los emplazamientos no se diligenciaron conforme a la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU), Ley Núm. 38-2017, 3 LPRA sec. 9601 *et seq.*

En la *Respuesta al Miembro de la Población Correccional* emitida el 8 de julio de 2025, la División de Remedios desestimó la solicitud CDB-384-25 por falta de jurisdicción, por el señor García Márquez no haber agotado el trámite administrativo contemplado por otros reglamentos aplicables a la controversia. La desestimación se decretó al amparo de la Regla XIII, inciso 5 (e), del Reglamento Núm. 8583, *supra.* En su determinación, la División de Remedios

consignó que, en cumplimiento con los incisos de la Regla 9 (1) y (3) del Reglamento Núm. 9221, *supra,* el Superintendente de la institución correccional había demostrado la necesidad de extender la medida de seguridad, lo que dio lugar a que la suspensión de los privilegios de los confinados del módulo en cuestión se extendieran por sesenta (60) días.[2]

Inconforme con la respuesta recibida, el recurrente suscribió una *Solicitud de Reconsideración* el 14 de julio de 2025, que la División de Remedios recibió el 23 de julio de 2025. En ella, aseveró que no cuestionaba las facultades del Superintendente de la institución correccional, sino que, más bien, su interés era denunciar que la suspensión de los privilegios en su módulo o sección fue una irregular. Reiteró que nunca se le notificó el informe de hallazgos y que no fue emplazado conforme a la LPAU.

El 6 de agosto de 2025, la División de Remedios emitió su *Respuesta de Reconsideración al Miembro de la Población Correccional,* en la que indicó al señor García Márquez que acogía su solicitud de reconsideración. En la subsiguiente *Resolución,* pronunciada el 10 de septiembre de 2025, la División de Remedios confirmó la desestimación de la solicitud de remedios administrativos CDB-384-25, por carecer de jurisdicción para atender el reclamo del recurrente. La agencia instruyó al señor García Márquez que el asunto estaba regulado por el Reglamento Núm. 9221, *supra,* aprobado a tenor con las disposiciones de la LPAU.

Aún insatisfecho, el señor García Márquez suscribió el presente recurso el 8 de octubre de 2025. Aunque no apuntó

---

[2] Conforme a la Regla 9, inciso (4), la vista administrativa para dilucidar la existencia de justa causa para extender la aplicación de la medida de seguridad se lleva a cabo ante un oficial examinador de la Oficina de Disciplina de Confinados. No obstante, el lenguaje de la *Respuesta al Miembro de la Población Correccional* parece indicar que fue la División de Remedios la que dilucidó el asunto.

propiamente un señalamiento de error, éste reproduce su planteamiento referente a la presunta irregularidad en el proceso que culminó en la suspensión de privilegios en el módulo de la institución correccional en el que permanece bajo custodia. Además, recalcó que la medida de suspensión de privilegios es una punitiva que, a su vez, violentó sus derechos constitucionales. Al final, solicita a este tribunal "que pase juicio [sobre] todo lo expuesto y solicitado en [su] recurso legal".[3]

Por su parte, mediante su *Escrito en cumplimiento de Resolución*, presentado el 6 de noviembre de 2025, el DCR expone las razones por las cuales entiende que debemos conceder deferencia al ente administrativo y confirmar la resolución recurrida.

En primer lugar, reconoció que, aunque conforme con la Regla VI (1) (c) del Reglamento Núm. 8583, la División de Remedios tiene jurisdicción para atender toda solicitud en la que "el superintendente impone la suspensión de privilegios sin celebración de vista alguna, conforme a la reglamentación vigente sobre la 'Suspensión de Privilegios por Razones de Seguridad', el señor García Márquez presentó su solicitud de remedios cuando ya había expirado el término de diez (10) días de la suspensión de los privilegios, razón por la cual la División de Remedios ya había perdido jurisdicción sobre el asunto.

Como razón adicional para conferir deferencia a la decisión administrativa, el DCR indicó que, a tenor con la Regla VI (2) (e) del Reglamento 8583, la División de Remedios carecía de jurisdicción para atender controversias en las que se impugne una decisión emitida por algún comité a tenor con otros reglamentos aprobados conforme las disposiciones de la LPAU; tal y como lo es la decisión

---

[3] SUMAC-TA, Entrada 1, *Recurso*.

del Superintendente de extender la suspensión de los privilegios por motivos de seguridad bajo la Regla 9 del Reglamento Núm. 9221. El DCR aseveró además que, toda vez que para esa decisión no intervino tribunal alguno, tampoco correspondía evaluar la solicitud de remedio bajo la excepción aplicable a los casos en que ésta se refiera al incumplimiento de algún trámite impuesto por un tribunal.

Por último, puntualizó que la medida de seguridad impugnada recayó sobre privilegios otorgados discrecionalmente por el DCR y no sobre derechos constitucionales protegidos.

**II.**

**A.**

Es norma firmemente establecida que los tribunales apelativos han de conceder gran consideración y deferencia a las decisiones de los organismos administrativos. Ello, dado que las agencias administrativas cuentan con vasta experiencia y conocimiento especializado en cuanto a los asuntos que les han sido encomendados.[4]

Como resultado, la decisión de una agencia administrativa gozará de una presunción de legalidad y corrección que será respetada, siempre que la parte que la impugna no produzca evidencia suficiente para rebatirla.[5]

En cuanto a las determinaciones de hecho que realiza una agencia, éstas serán sostenidas por el tribunal si se basan en evidencia sustancial que obra en el expediente administrativo.[6] Por evidencia sustancial se entiende "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener

---

[4] *Moreno Lorenzo y otros v. Depto. Fam.*, 207 DPR 833, 839 (2021), citando a *OCS v. Universal*, 187 DPR 164, 178 (2012); *The Sembler Co. v. Mun. de Carolina*, 185 DPR 800 (2012); *Pagán Santiago, et al. v. ASR*, 185 DPR 341, 358 (2012).

[5] *Transp. Sonnell, LLC v. Jta. Subastas ACT,* 214 DPR 633, 648 (2024); *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 215 (2012).

[6] Sec. 4.5 de la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU), Ley Núm. 38-2017, 3 LPRA sec. 9675.

una conclusión".[7]  Por lo tanto, la parte afectada por la decisión administrativa deberá reducir el valor de la evidencia impugnada o demostrar la existencia de otra prueba que sostenga que la actuación del ente administrativo no estuvo basada en evidencia sustancial.[8]

Ahora bien, respecto a las conclusiones de derecho de las decisiones de las agencias administrativas, la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU), Ley Núm. 38-2017, señala que éstas pueden ser revisadas en todos sus aspectos por el tribunal.[9]

Al respecto, recientemente, en *Vázquez v. Consejo de Titulares*[10], el Tribunal Supremo hizo eco de la decisión del foro federal en el caso *Loper Bright Enterprises v. Raimondo[11]*, y determinó que la interpretación de la ley es una tarea que corresponde inherentemente a los tribunales. En *Vázquez,* el Tribunal Supremo enfatizó la necesidad de que los foros judiciales, en el ejercicio de su función revisora, actúen con el rigor que prescribe la LPAU, *supra*. Puntualizó que, al enfrentarse a un recurso de revisión judicial proveniente de una agencia administrativa, será el deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos. Con ello, nuestro Tribunal Supremo pautó el fin de la deferencia absoluta a las apreciaciones de derecho arribadas por las agencias administrativas.[12] En fin, delimitó que la interpretación de la ley es una tarea que le corresponde a los tribunales y como corolario, los

---

[7] *Rolón Martínez v. Superintendente*, 201 DPR 26, 36 (2018); *González Segarra et al. v. CFSE*, 188 DPR 252, 277 (2013); *Otero v. Toyota*, 163 DPR 716, 728-729 (2005).

[8] *Otero v. Toyota*, supra, pág. 728.

[9] Sec. 4.5 de la LPAU, 3 LPRA sec. 9675.

[10] *Vázquez v. Consejo de Titulares*, 216 DPR ___ (2025), 2025 TSPR 56 (resuelto el 21 de mayo de 2025).

[11] *Loper Bright Enterprises v. Raimondo*, ___ U.S. ___, 144 S. Ct. 2244, 219 L.Ed.2d 832 (2024)

[12] *Vázquez v. Consejo de Titulares*, supra.

tribunales deben revisar las conclusiones de derecho en todos sus aspectos. Ello, como mecanismo interpretativo del poder judicial.[13]

Por consiguiente, la deferencia concedida a las agencias administrativas únicamente cederá cuando: (1) la determinación administrativa no esté basada en evidencia sustancial; (2) el organismo administrativo haya errado en la aplicación o interpretación de las leyes o los reglamentos que se le ha encomendado administrar; (3) cuando el organismo administrativo actúe arbitraria, irrazonable o ilegalmente, al realizar determinaciones carentes de una base racional; o, (4) cuando la actuación administrativa lesione derechos constitucionales fundamentales.[14]

**B.**

La Regla 9 del *Reglamento para Establecer el Procedimiento Disciplinario de la Población Correccional,* Reglamento Núm. 9221, de 8 de octubre de 2020, permite al Departamento de Corrección y Rehabilitación suspenderle privilegios a los confinados como una medida de seguridad, no como una medida disciplinaria. La Regla 9 establece lo siguiente:

> REGLA 9 – SUSPENSIÓN DE PRIVILEGIOS POR MEDIDA DE SEGURIDAD
>
> 1. El superintendente de la institución correccional podrá suspender los privilegios, sin celebración de vista administrativa, por un período de tiempo que no exceda a diez (10) días calendarios, en aquellas circunstancias que atenten contra la seguridad institucional. El Superintendente no podrá extender el término expresamente dispuesto en este inciso. Bajo ninguna circunstancia, esta disposición podrá ser utilizada por el Superintendente de la institución correccional como medida disciplinaria.
>
> 2. Queda prohibida la cancelación del privilegio de visita a un grupo, unidad de vivienda, edificio o institución como medida disciplinaria. Sin embargo, esto no impedirá la suspensión de este privilegio cuando

[13] *Id.*
[14] *Super Asphalt v. AFI y otros,* 206 DPR 803, 819 (2021); *Torres Rivera v. Policía de Puerto Rico,* 196 DPR 606, 628 (2016); *IFCO Recycling v. Aut. Desp. Sólidos,* 184 DPR 712, 744-745 (2012).

existan otras razones que no sean de índole disciplinario que así lo requieran y que estén en total acorde con las circunstancias específicamente establecidas para afianzar la seguridad. En estos casos, deberá entenderse que la suspensión de privilegios responde estrictamente a una medida seguridad y no a una medida disciplinaria.

3. El superintendente deberá notificar por escrito a la Oficina de Asuntos Legales la acción tomada dentro del próximo día laborable de haber tomado la acción. El Director de la Oficina de Asuntos Legales o su representante, referirá el asunto a la Oficina de Investigaciones del Sistema Correccional (OISC). La investigación será conducida por la Oficina de Investigaciones del Sistema Correccional (OISC), con el propósito de determinar si existe justa causa para extender la suspensión de privilegios por razones de seguridad. Los privilegios podrán ser suspendidos por razones de seguridad, bajo una de las siguientes circunstancias:
[...]

d. Cuando ocurran hallazgos de cualquier contrabando peligroso, tal como armas de fuego, sustancias controladas, artefactos explosivos o cualquier otro material prohibido por ley o reglamento.

4. La Oficina de Disciplina de Confinados calendarizará una vista administrativa que será presidida por un Oficial Examinador con el propósito de determinar la existencia de justa causa para extender la aplicación de la medida de seguridad, así como la cantidad de días por los que se extenderá la misma. Dicha vista será celebrada antes del cumplimiento de los diez (10) días calendarios de tomada la acción o medida de seguridad. De lograrse el cese de la circunstancia que originó que se afectara la seguridad institucional antes de cumplirse el máximo de diez (10) días autorizados para la aplicación, el superintendente, deberá de inmediato dejar sin efecto la medida impuesta, notificando su acción a la Oficina de Disciplina de Confinados.

La Regla 10 del Reglamento Núm. 9221, sobre emplazamiento, especifica el proceso de notificación al confinado. Explica que al confinado se le notifica de la radicación de la querella disciplinaria dentro del término de dos días de haberse incoado, entregándole copia del documento. Por su parte, Regla 12, detalla el proceso inherente a la investigación de la querella. A tales efectos, indica que el oficial de querellas entrevista a toda persona relacionada, directa o indirectamente, con los hechos imputados y radicará un informe que contenga todas las declaraciones de los testigos y prueba

recopilada. De conformidad con la Regla 32 (4) de Reglamento Núm. 9221, el oficial de querellas está obligado a mantener la confidencialidad de la información. A su vez, la Regla 13 establece que, en instancias en las que se impute la comisión de un acto prohibido, el oficial de querella referirá el caso al oficial examinador de vistas disciplinarias para el señalamiento y la celebración de la vista. La Regla 6 especifica que el miembro de la población correccional tiene la posibilidad de solicitar que se le provea copia de todo documento que sea parte del reporte de cargo rendido por el oficial de querellas. Según la Regla 28, la resolución del caso que emita el oficial examinador, cuya copia se entregará al querellado, le advertirá sobre su derecho a solicitar reconsideración ante el DCR y/o revisión judicial, según aplique, con expresión de los términos correspondientes.

## c.

El *Reglamento para Atender las Solicitudes de Remedios Administrativos Radicadas por los Miembros de la Población Correccional,* Reglamento Núm. 8583, de 4 de mayo de 2015, establece un marco normativo para la presentación, evaluación y resolución ante la División de Remedios Administrativos del Departamento de Corrección y Rehabilitación de las solicitudes de remedios administrativos por parte de los miembros de la población correccional relacionadas a su confinamiento. Introducción del Reglamento Núm. 8583. El Reglamento establece un proceso para ventilar las quejas de los confinados, el cual va desde la presentación de la solicitud del remedio administrativo hasta la resolución de la reconsideración por el Coordinador Regional del Programa. Reglas XII-XV del Reglamento Núm. 8583.

En cuanto a la jurisdicción de la División de Remedios Administrativos, la Regla VI del Reglamento Núm. 8583, *supra,* establece lo siguiente:

1. La **División tendrá jurisdicción** para atender toda Solicitud de Remedio radicada por los miembros de la población correccional en cualquier institución o facilidad correccional donde se encuentre extinguiendo sentencia y que esté, relacionada directa o indirectamente con:

[…]

c. Cuando el superintendente impone la suspensión de privilegios sin celebración de vista alguna, conforme a la reglamentación vigente sobre la "Suspensión de Privilegios por Razones de Seguridad".

[…]

**2. La División no tendrá jurisdicción para atender las siguientes situaciones:**

a. Cuando no haya agotado el trámite administrativo concedido por otros reglamentos, excepto que la solicitud se refiera al incumplimiento del trámite correspondiente ante aquel organismo.

[…]

e. Cuando se impugne una decisión emitida por algún comité conforme a los reglamentos aprobados, según dispone la Ley de Procedimiento Administrativo Uniforme, excepto que la Solicitud de Remedio se refiera al incumplimiento del trámite correspondiente impuesto por un tribunal.

[…]. (Énfasis suplido).

A su vez, la Regla XIII del Reglamento Núm. 8583, sobre el procedimiento para emitir respuestas, dispone, en lo atinente, que:

5. El Evaluador tiene la facultad para desestimar las siguientes solicitudes:

[…]

(e) Por falta de jurisdicción, según se define en la Regla VI de este Reglamento.

[…].

## III.

En el presente caso, el señor García Márquez presentó ante la División de Remedios una solicitud de remedio para impugnar la aplicación de la Regla 9 en el módulo de la institución correccional en la que se encuentra confinado alegando irregularidades en el proceso de registro que dio lugar a la imposición de la medida de

seguridad. La División de Remedios, amparada en la Regla XIII, inciso 5 (e), del Reglamento Núm. 8583, *supra,* desestimó la solicitud del señor García Márquez por este no haber agotado el trámite administrativo contemplado en el Reglamento Núm. 9221, *supra.* En reconsideración, la División de Remedios confirmó la desestimación de la solicitud de remedios administrativos por carecer de jurisdicción para atender el reclamo e instruyó al señor García Márquez que el asunto estaba regulado por el Reglamento Núm. 9221, *supra.*

Según se desprende de las disposiciones citadas, la División de Remedios creada en virtud del Reglamento Núm. 8583 carece de jurisdicción para atender situaciones en las que un miembro de la población correccional no hubiere agotado el trámite administrativo concedido por otros reglamentos. En su solicitud de remedio administrativo, el señor García Márquez alegó presuntas irregularidades en el procedimiento establecido para la imposición de la medida de seguridad. En particular, en lo referente al emplazamiento y a la presunta falta de notificación del informe de hallazgos. Sin embargo, del expediente no surge que el recurrente hubiera presentado su reclamo ante el organismo dispuesto en el Reglamento Núm. 9221, *supra*, y agotado el trámite administrativo allí disponible.

En cuanto a la excepción que surge de la Regla VI (2) (a) del Reglamento 8583, *supra,* a los efectos de que la División de Remedios tendría jurisdicción si "la solicitud se refier[e] al incumplimiento del trámite correspondiente ante aquel organismo", basta señalar que, al no haber constancia de que el recurrente hubiese siquiera iniciado el trámite administrativo dispuesto en el Reglamento Núm. 9221, tampoco cabe imputar incumplimiento alguno por parte del organismo con el trámite estatuido para ello.

Por otra parte, resulta igualmente inaplicable al presente caso la excepción de la Regla VI (2) (e) del Reglamento Núm. 8583, *supra,* pues la solicitud de remedio del señor García Márquez tampoco aseveró que el organismo con jurisdicción para atender su reclamo hubiera incumplido algún trámite impuesto por un tribunal.

En virtud de lo anterior, la División de Remedios tenía facultad para desestimar la solicitud por falta de jurisdicción, ante el hecho de que el recurrente no agotó el trámite correspondiente bajo el Reglamento 9122. El señor García Márquez no logró rebatir la presunción de corrección que cobija a las determinaciones administrativas.

En su consecuencia, acorde con la norma que establece que las decisiones de los organismos administrativos merecen la mayor deferencia judicial, no encontramos base jurídica para arribar a un resultado distinto al que llegó el DCR. Por ende, corresponde confirmar la resolución impugnada, que desestimó su solicitud de remedio administrativo.

**IV.**

Por los fundamentos antes expuestos, confirmamos la *Resolución* recurrida.

Notifíquese.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones